UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 12 CR 791-2 |
| vs. ) | |
| ) | Judge John Z. Lee |
| STEVE LEWIS ) | |
| ) | |

## DEFENDANT'S RESPONSE TO
## GOVERNMENT'S MOTION IN LIMINE

The defendant, STEVE LEWIS, by and through his counsel, the AMBROSE LAW FIRM and DiNICOLA LAW OFFICES, hereby responds to the government's motion, in limine, to bar the introduction of "evidence, cross-examination or argument regarding the victim financial institutions' alleged misconduct, negligence or lack of reasonable reliance."

### I.

### Introduction

In support of its motion, the government relies largely on a series of cases in which the defendant sought to present evidence of the negligence or misconduct of a financial institution to show that the financial institution had within its power the ability to detect and avoid any adverse consequence from the conduct of the defendant. It is noteworthy that the evidence proffered in the cases cited by the government did not tend to negate any element of the offenses charged. Under these circumstances, the government correctly observes that courts have found such evidence irrelevant, characterizing it as an impermissible attempt to shift the focus away from the wrongdoing of the defendant to the financial institution.

However, the government overlooks the equally well-settled proposition applicable here that evidence regarding a financial institution's practices or procedures that tend to negate an element of the offense charged is relevant and admissible. This is particularly true where the evidence bears upon the defendant's state of mind. In the recently decided seminal en banc decision, United States v. Phillips, 731 F.3d 649 (7th Cir. 2013), the court assiduously articulated various circumstances under which the defendant's knowledge or belief concerning the business practices of a financial institution would be relevant and admissible to negate the elements of knowledge and intent, among other things.

The ruling in Phillips is particularly compelling when applied to the unique circumstances of the present case. Here, the defendant Steve Lewis was the founder and owner of Contract Purchasing and Design, Inc. ("CPD'), an interior design firm of national repute specializing in hotel renovations. CPD had been engaged by Atul Bisaria to renovate two (2) hotels owned by a network of companies associated with Bisaria. The companies secured loans from Broadway Bank and Mutual Bank to carry out the renovations. Lewis was not in privity with the banks in the underlying loan transactions, he did not sign the loan documents, did not review the loan documents, did not know or interact with bank officials in securing the loans and did not know the terms of the loan agreements.

Lewis knowledge of the terms of the underlying loan transactions was limited and based entirely upon information that Lewis received from Bisaria. Lewis had no reason to question Bisaria's bona fides or his representations at the time given that the banks had seen fit to provide Bisaria's network of companies tens of millions of dollars in loan financing. Although Bisaria was someone Judge Posner would likely describe as a "crook," like Brian Bowling, the broker in Phillips, it was years before the banks and government officials would regard him as such. By

the time they did in 2012, long after the period that is the subject of the indictment, Bisaria had fled the country.

In short, the evidence in this case will be that Bisaria represented to Lewis the terms of the loans, and that the banks had approved the draw downs at issue in this case including, but not limited to, the disbursement of funds and allocation of materials among and between Bisaria's network of companies, i.e., Shubh Htotels, LLC and related entities. As demonstrated below, evidence of Bisaria's representations regarding the loans - like those of Bowling in the <u>Phillips</u> case -- are admissible, as are the business practices of the banks that would tend to corroborate the representations of Bisaria to Lewis.

## II.

## Factual Background

Lewis built his successful family-operated small business by establishing over a thirty year period CPD's ability to meet the exacting interior design standards of the leading hotel flags in the nation -- InterContinental Hotel Group, Crowne Plaza Hotels, Starwood Hotels, Hilton Hotels, Marriott Hotels, Choice Hotels, and Best Western Hotels, to name a few. The CPD team prepares a master design plan, master budget. and implements the painstaking step-by-step approval of the design plan with the design control division of the hotel chain.

Lewis core relationship is with the hotel chain. CPD is not a banker, a lender and it does not provide financing. CPD does not deal with bank applications, loan compliance or loan modifications. Owners engage CPD because of its ability to meet the hotel chain standards. Owners come with their financing in place. The work of obtaining financing and complying with the terms of financing are the exclusive province of the owner.

3

During the period relevant to the government's case -- April 2007 to March 2008 -- CPD business was healthy and profitable. During that period, the company was involved in renovating as many as twenty (20) hotels around the country, two (2) of which are the subject of this indictment. All CPD transactions were utterly and meticulously transparent, all transactions were booked and fully accounted for, all tax returns were filed, and all taxes were timely remitted on all income. All pertinent records were provided to the government in connection with its investigation. There is no allegation that Lewis or CPD profited a dime from anything other than honest services. Lewis has no prior criminal record or arrests of any kind; he enjoys an impeccable reputation in his community and profession.

Lewis met Bisaria about fifteen (15) years ago when Bisaria was a representative for a group of investors that were acquiring and renovating older hotels in need of renovation to either maintain their franchise flag or to meet required upgrades required by the franchisor. In or about 2003, Shubh Hotels, LLC, a company formed by Bisaria, began purchasing hotels and renovating them to make them more competitive. The first acquisition was the Cornhusker Hotel in Lincoln, Nebraska. The second acquisition was the Pontchartrain Hotel in Detroit, Michigan. The third was the Pittsburgh Hilton in Pittsburgh, Pennsylvania. The forth was the Springdale Hotel in Cincinnati, Ohio. The fifth was the DoubleTree in Boca Raton, Florida.

In each case, a Shubh hotel entity of Bisaria purchased the hotel and then engaged CPD to do the design, upgrading, and renovation work. The defense is informed and believes that the original lender on the Boca Raton and Cincinnati Hotels was Credit Suisse, a well establish international bank. Lewis was not aware of the terms and conditions of the loans with Credit Suisse for either project. Thereafter, Bisaria began dealing with a broker by the name of Harry Shah, who in turn brokered refinance deals with both Broadway Bank and Mutual Bank. In both

of the refinance loans Lewis was unaware of the terms and conditions of the loans or any modifications related to the refinancing.

Mutual Bank and Broadway Bank were not ordinary run of the mill state chartered banks. They were institutions run by dirty bankers whose questionable business practices would be illuminated over a period of time. Mutual Bank was closed by the FDIC and State Regulators on July 31, 2009, leaving an estimated loss of almost seven hundred million dollars ($700,000,000). Broadway Bank was closed by the FDIC and State Regulators in July of 2010, with an estimated loss of three hundred eighty-four million dollars ($384,000,000).

Bisaria had deep roots in both failed banks -- financial, ethnic and otherwise. Lewis - a resident of Florida - had no relationship with either bank; Lewis did not know, visit, meet, socialize or conduct business with anyone associated with either institution. Not a single bank officer or employee of either bank has answered for the billion dollar loss sustained in the Northern District of Illinois. The few that have come under scrutiny have fled to their native India. Only Lewis stands before the court, the lowest man on the totem pole, a stalwart small businessman, who himself lost hundreds of thousands of dollars to Bisaria and the banks, and the only one to render honest services in the entire milieu of this lop-sided prosecution.

The present indictment focuses on the Cincinnati and Boca Raton hotel projects and alleges that Lewis submitted false invoices and related documents to Mutual Bank and Broadway Bank in order in order to aid and abet Bisaria's scheme to defraud those banks. In fact, Lewis and CPD performed substantial honest services in connection with both projects and fully earned the fees they were paid and the hundreds of thousands they were never paid. Lewis will present evidence concerning Bisaria representations to Lewis regarding the terms of the loans, and that the banks had approved the draw downs at issue in this case including, but not limited to, the

disbursement of funds and allocation of materials among and between Bisaria's network of companies, i.e., Shubh Hotels, LLC and related entities. Lewis will also present evidence of the business practices of the banks that corroborate the representations of Bisaria to Lewis.

It must be noted that Lewis' proffer of anticipated evidence is not subject to precise determination at this time since it is subject to the argument and evidence presented by the government. Accordingly, the defense would respectfully request that the court defer the determination of the admissibility of specific evidence until the time of trial when the relevance and probative nature of such evidence might be more fully developed.

### III.

### Argument

A.  **Under <u>United States v. Phillips</u>, Evidence of a Bank's Assent to Particular Practices or Procedures is Admissible to Negate the Elements of 18 U.S.C. §§ 1014 and 1343**

In <u>United States v. Phillips</u>, 731 F.3d 649 (7th Cir. 2013), the Court of Appeals sitting <u>en banc</u> found it permissible for defendants to introduce evidence of statements made to them by an independent mortgage broker regarding a bank's loan application practices in order to prove that defendants did not intend to defraud a bank in filling out a loan application.[1] Specifically, the defendants sought to introduce the broker's statements to them that the bank was only concerned about the borrower's credit rating and it was therefore permissible to aggregate the borrower's income with her partner even though the loan application sought the borrower's income. <u>Phillips</u>, 731 F.3d at 653. The court found the evidence relevant to negate the alleged falsity of

---

[1] The <u>Phillips</u> court found that the testimony of what the mortgage broker had told the defendants was not hearsay because it was offered for what he had said and what the defendants thought he meant. <u>See</u>, Fed. R. Evid. 801(c)(2) <u>and</u> <u>Phillips</u>, 731 F.3d at 653.

6

the defendants' statements in the application and the defendants' intent to influence the bank even though the broker's statement were inconsistent with the loan application.[2]

The District Court in Phillips had excluded the evidence as irrelevant, ruling that "if mortgage applicants 'sign something and they send it in, they're attempting to influence the bank...'" Phillips, 731 F.3d at 651. The Court of Appeal rejected this reasoning:

> The implication of the [above] passage...is that making a statement that is false and influences a bank is a crime. It isn't. The statement must be *knowingly* false. The judge excluded evidence that if believed might have convinced a jury that any false statements the defendants made were not made knowingly--that is, not known by them to be false....The evidence if believed might also have rebutted an inference of intent to influence the bank....If the loan applicant doesn't think his falsehood would influence the bank it is unlikely that in making it he intended to influence the bank....

Phillips, 731 F.3d at 651-652.

Accordingly, as in Phillips, evidence of the bank's assent to a particular procedure is admissible to negate the elements of 18 U.S.C. §§ 1014 and 1343. Here, the evidence in this case will be, among other things, that Bisaria represented to Lewis the terms of the loans, and that the banks had approved the transactions at issue in this case including, but not limited to, the disbursement of funds and allocation of materials among and between Bisaria's network of companies, i.e., Shubh Hotels, LLC and related entities. As such, the sales invoices and related documents submitted to Mutual and Broadway Bank in connection with the draw downs were neither false nor intended to influence the banks since the banks were both aware of and had approved the contemplated transactions.

---

[2] The defendants "wanted to testify that [the mortgage broker] Bowling had told them that in a stated-income loan the line for the borrower's income on the application form really means the borrower's income plus the income of a spouse, or parent, or a person one is cohabiting with in a committed relationship whether marital or nonmarital, or anyone else whose income will be an additional source of repayment of the mortgage." Phillips, 731 F.3d at 653.

7

Moreover, in the context of this case, the documents submitted by Lewis to the bank were immaterial in light of what Bisaria represented to Lewis and, as more fully developed below, based on the aggressive growth strategy pursued by the banks which corroborates Bisaria's representations. While materiality is not an element of the offense under 18 U.S.C. §1014, it is both an element under 18 U.S.C. § 1343 and relevant to a §1014 charge.

> If the loan applicant doesn't think his falsehood would influence the bank it is unlikely that in making it he intended to influence the bank; as in our example of the actress, he would have had a different motive. As the Supreme Court explained in Wells, "a statement made 'for the purpose of influencing' a bank will not usually be about something a banker would regard as trivial, and 'it will be relatively rare that the Government will be able to prove that' a false statement 'was ... made with the subjective intent' of influencing a decision unless it could first prove that the statement has 'the natural tendency to influence the decision.' Hence the literal reading of the statute will not normally take the scope of § 1014 beyond the limit that a materiality requirement would impose." United States v. Wells, 519 U.S. [482,] 499...[(1997)]..., quoting Kungys v. United States, 485 U.S. 759, 780-81, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988).
>
> Wells declined to read a requirement of proving materiality into the statute not because materiality is irrelevant but because "the literal reading of the statute"-- **the reading that excludes materiality as an element of the offense-nevertheless allows immateriality to be used as evidence that the false statement was not intended to influence the bank.**

Phillips, 731 F.3d at 652 (emphasis added).

**B.  Evidence of a Bank's Business Model or Plan is Admissible to Corroborate Evidence of the Bank's Assent to Practices or Procedures Negating Elements of the Offenses**

The governments case at its core includes an attack upon the credibility of Bisaria that will naturally extend to an attack on whether and what representations were made by Bisaria to Lewis concerning the banks' assent to the terms of the loan transactions and the draw downs at issue. The attack will also extend to Lewis' credibility as to the circumstances and content of Bisaria's representations, Under this attack, evidence of the banks' business model and/or plan that establishes a basis for the bank's assent to the loan transactions and draw downs is

8

admissible to corroborate Lewis' testimony and the representations made by Bisaria. Such evidence is not offered to shift attention to the banks' wrongdoing but rather to corroborate evidence offered to negate the elements of the offenses charged as to both falsity and intent.

In Phillips, the court referenced with approval that the bank's business model was corroborative of the statements made by Bowling to the borrowers. The court recognized that the jury would likely credit Bowling's representations about the bank's indifference to income based on its business plan to sell the mortgage in the secondary market. The court stated:

> [T]here was also evidence, consistent with [the bank] Fremont's business model, that the bank didn't give a fig about the couple's ability to repay the loan. It planned to sell the loan, which would then be folded with many other loans into a mortgage-backed security that would be sliced and the slices sold around the world, the premise being that the security would be safe because of diversification --the mortgages bundled into the security would be on properties scattered across the United States. A nationwide collapse of the housing market was not foreseen.
>
> It's true that even if the bank didn't care what was on the loan application, the defendants could have thought they were influencing the bank--and a purpose to influence is an element of the crime (though, to repeat, only if the influence is exerted through knowingly false statements). But a jury could find that the defendants believed the bank had approved the loan to the couple, and was telling them through Bowling what to put on the loan application, or what he should put on it in their name, and that in complying with his directives the defendants were not trying to influence the bank because they knew the bank had already made up its mind to make the loan and were just following Bowling's directions, which they may not have understood. What if he told them that the bank wouldn't even read their application, that all it cared about was having a signed application? Then in authorizing Bowling to fill in the application the defendants would not have been trying to influence the bank.

Phillips, 731 F.3d at 655.

Here, the government acknowledges through bank business and public records that Mutual and Broadway Banks pursued, among other things, a business model premised on lax "oversight in managing the risks associated with the bank's aggressive growth strategy." Government's Motion in Limine at p. 3-4. It is precisely this strategy of permissiveness,

9

cooperation and aggressiveness that Bisaria trumpeted in his representations to Lewis and which, in turn, became the basis for Bisaria's own aggressive growth strategy. These and other attributes of the Mutual and Broadway Bank growth strategies set forth in separate FDIC Inspector General Reports are entirely corroborative of the representations made by Bisaria concerning the banks' enthusiastic approval of the transactions at issue in this case.

The following list is representative but not exhaustive of the evidence the defense believes is relevant and admissible although, again, the defense believes a precise determination of relevancy and admissibility should be deferred to the time of trial:

1. The FDIC Office of Inspector General Reports on Mutual Bank and Broadway Bank;

2. Testimony, statements and documents of Richard Barth, Senior Vice-President of Broadway Bank;

3. Testimony, statements and documents of James Rigas, Chairman of the Loan Committee, Vice-Chairman of the Board and Outside General Counsel of Broadway Bank;

4. Testimony, statements and documents of Vinit Shah, Vice-President, Loan Operations, Broadway Bank (and listed on the government's witness list); and

5. Testimony, statements and documents of Sandra Eyrl, Vice-President, Loan Operations, Mutual Bank

6. Testimony, statements and documents of Barbara Groom, Assistant Vice-President, Loan Operations, and Bank Suspicious Activity (BSA) Officer, Mutual Bank

7. Testimony, statements and documents of Robert Hololik, Vice-President of Loan Underwriting, Mutual Bank (and listed on the government's witness list)

For the reasons set forth above, the foregoing evidence is relevant to corroborate the representations of Bisaria and the testimony of Lewis. The documentary evidence is self-authenticating and non-hearsay under Federal Rules of Evidence 803(8) [public records] and 901(17) [authentication]. As an alternative basis for admission, such evidence and evidence of similar transactions are admissible as further corroboration under Federal Rule of Evidence 404(b) irrespective of whether such evidence relates to the specific transactions at issue.

## IV.

## Conclusion

The Government's Motion in Limine should be denied because it seeks to exclude evidence that is relevant and admissible as to the critical elements of knowledge and intent as it relates to the crime of wire fraud, 18 U. S. C. § 1343, and intent to influence a financial institution, 18 U. S. C. § 1014. See, Phillips, 731 F. 3d 649.

Respectfully submitted,

**AMBROSE LAW FIRM**
**Leonard G. Ambrose, III**

**DiNICOLA LAW OFFICES**

By: /s/ Ronald A. DiNicola
Ronald A. DiNicola
Pa. Atty. No. 36930
1001 State Street, Suite 1400
Erie, PA 16505
Ph: (814) 451-1118
Email: Ronald@DiNicolaGroup.com

*Attorneys for Defendant Steve Lewis*

11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Vs. | ) |
| | ) CRIMINAL ACTION NO. 12 CR 791-2 |
| STEVE LEWIS, | ) |
| | ) |
| Defendant | ) FILED ELECTRONICALLY |

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, I electronically submitted the foregoing document to the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" and copy of the foregoing document to the counsel of record, who by rule, have consented to accept the service of this document by electronic means.

**AMBROSE LAW FIRM**

By: */s/ Leonard G. Ambrose, III*
Leonard G. Ambrose, III
Pa. Atty. I.D. #18824
319 W. 8th St.
Erie, PA 16502